Emilio C. **GONZALEZ**, Appellant,

v.

**GAINAN'S CHEVROLET CITY, INC.,
and General Motors Acceptance
Corporation, Appellee.**

**No. 13–83–107–CV.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 31, 1984.

Rehearing Denied Nov. 1, 1984.

[black bar]

Thomas M. Schumacher, Kimbel L. Brown, Corpus Christi, for appellant.

William J. Chriss, Andrew J. Lehrman, Kleberg, Dyer, Redford & Weil, Sorrell, Anderson & Sorrell, Corpus Christi, for appellee.

Before NYE, C.J., and YOUNG and BISSETT, JJ.

## OPINION

YOUNG, Justice.

This is an appeal from a judgment granted against appellant Emilio C. Gonzalez, in favor of appellees, Gainan's Chevrolet City, Inc. and General Motors Acceptance Corporation. Appellant sued both appellees for violations of the Texas Consumer Credit Code, Article 5069–7.01, et seq., TEX.REV. CIV.STAT.ANN. (Vernon Supp.1984), arising out of a retail installment contract that he signed in connection with the purchase of a motor vehicle. The trial court found no violations of the credit code. We affirm.

Appellant contracted with Gainan's Chevrolet City, Inc. on July 1, 1976, for the purchase of a used 1976 Chevrolet station wagon. Appellant executed a retail installment contract with Gainan's whereby he was scheduled to make 24 monthly installment payments beginning on August 16, 1976. The contract was a 1976 GMAC form contract; it was subsequently assigned to GMAC by Gainan's. In connection with the purchase of the pick-up truck, appellant also executed a document entitled Customer's Statement, which is also a GMAC form, and which is claimed by appellees to be part of the retail installment contract. Appellant finished paying the monthly payments without any default. Appellees never attempted to repossess the vehicle or to accelerate the monthly installment payments. The suit was not brought for actual damages for breach of warranty

or dissatisfaction with the vehicle. This suit was for statutory penalties for technical violations of the Texas Consumer Credit Code.

This is a companion case to Juan L. Garcia v. Gainan's Chevrolet City, Inc., et al, our no. 13–83–127–CV, with identical issues involved in both cases. The reasonings and holdings are the same in disposing of both appeals.

Appellant's first point of error is that the trial court erred by not holding that the retail installment contract by its provision, whereby appellant agreed not to assert claims or defenses arising out of the sale, violated TEX.REV.CIV.STAT.ANN. art. 5069–7.07(6) (Vernon Supp.1984). Article 5069–7.07(6) states that no retail installment contract shall provide that the buyer agrees not to assert against the seller or holder of any claim or defense arising out of the sale. The offensive clause is section 7(c) of the additional terms on the reverse side of the contract which provides that: "It is mutually understood and agreed that, except where the seller is also the manufacturer of said property, buyer will not assert against any subsequent holder as assignee of this contract any claim or defense which the buyer may have against the manufacturer or a seller other than the seller of said property obtained pursuant hereto."

[black bar] The Texas Consumer Credit Code is to be liberally construed. *Knight v. International Harvester Credit Corp.*, 627 S.W.2d 382 (Tex.1982). Contracting parties are presumed to have intended to obey the law unless the contrary clearly appears from the contract; and courts must presume the parties intended an interpretation of the terms that is legal and complies with the Code. Furthermore, courts in reviewing the contract as a whole, are obligated to adopt a rule of construction which comports with legality and compliance. *Haley v. Pagan Lewis Motors, Inc.*, 647 S.W.2d 319 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.), *Grant v. Friendly Chrysler-Plymouth, Inc.*, 612 S.W.2d 667 (Tex.Civ.

App.—Corpus Christi 1981, writ ref'd n.r. e.).

In reviewing the face of the contract in line with *Haley*, there is a notice in bold capital letters just above the buyer's signature that states: **ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

■ The trial court's conclusion, that the retail installment contract does not contain a provision in which appellant agreed not to assert against the assignee of the contract claims or defenses arising out of the sale, will be upheld for the following reasons: 1) it is uncertain whether the language in section 7(c) on the reverse side of the contract actually is a waiver of claims and defenses arising out of the sale; 2) the notice on the face of the contract in bold face type near buyer's signature is more conspicuous, *Ford Motor Credit Co. v. Gamez*, 617 S.W.2d 720 (Tex.Civ. App.—Eastland 1980, writ ref'd n.r.e.), than the language in 7(c) which is not in large capitals on the reverse side of the contract, *Smith v. Chapman*, 614 F.2d 968 (5th Cir.1980), which would give the notice priority if there were any conflict in the terms, *Portland Tradewinds Ford v. Lugo*, 613 S.W.2d 26 (Tex.Civ.App.—Corpus Christi 1981, no writ); and 3) our rule of construction appearing in *Haley* favors a holding that comports with legality.

Therefore, we hold that the contract did not violate article 5069–7.07(6) and the trial court's holding will not be overturned. *See Flores v. Charlie Thomas Courtesy Ford, Inc.*, 669 S.W.2d 165 (Tex.App.—Corpus Christi 1984, no writ). Appellant's first point of error is overruled.

Appellant's second point of error is that the trial court erred by not finding that the contract violated TEX.REV.CIV.STAT. ANN. art. 5069–7.07(3) (Vernon Supp.1984) by authorizing unlawful entry of appellant's premises to repossess the motor vehicle.

Article 5069–7.07(3) at the time the contract was signed provided that retail installment contracts may not:

(3) Authorize the seller or holder or other person acting on his behalf to enter upon the buyer's premises unlawfully or to commit any breach of the peace in the repossession of a motor vehicle;

Article 5069.7.07(3) may be properly construed in light of the context of Section 9.503 of the TEX.BUS & COM.CODE (TEX UCC) (Vernon Supp.1984), effective on January 1, 1974. It provided in pertinent part:

Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

The part of the contract objected to is the latter half of the first paragraph of section 6 of the additional terms on the back side of the contract:

Further in any such event, seller or any sheriff or other officer of the law may take immediate possession of said property without demand, including any equipment or accessories thereto; and for this purpose seller may enter upon the premises where said property may be and remove same. Seller may take possession of any other property in the hereinbefore described motor vehicle at time of repossession, wherever such other property may be therein, and hold same for buyer at buyer's risk without liability on the part of seller. Such repossession shall not affect seller's right, hereby confirmed, to retain all payments made prior thereto by the buyer hereunder.

Three Fort Worth Court of Appeals' cases have held that language authorizing repossession with free "right-of-entry" language does not mean that seller is given a

contractual right to break the law by allowing trespass. That Court read such language as a limitation; that is, recognizing that public policy favors peaceful, non-trespass repossessions, would allow seller to repossess property only where he found free right of entry. *Charlie Hillard, Inc. v. Heath,* 624 S.W.2d 758 (Tex.App.—Fort Worth 1981, no writ); *Dub Shaw Ford, Inc. v. Jackson,* 622 S.W.2d 664 (Tex.App. —Fort Worth 1981,, no writ); and *Woolard v. Texas Motors, Inc.,* 616 S.W.2d 706 (Tex. Civ.App.—Fort Worth 1981, no writ).

■ In the case before us, however, the words "free right of entry" are not found. There is a line of cases that suggest that words that connote or imply peaceable entry and repossession, albeit without notice or legal action, would also not be a violation of the Consumer Credit Code. *Ormsby v. Parker Square Bank,* 610 S.W.2d 246 (Tex.Civ.App.—Fort Worth 1980, no writ), and *Martens v. General Motors Acceptance Corp.,* 584 S.W.2d 941 (Tex.Civ.App. —Dallas 1979, no writ). Where a contract does not expand the right of repossession, and it does not authorize a breach of the peace, it does not violate art. 5069–7.07(3). *Redmac Leases, Inc. v. Lessner,* 616 S.W.2d 627 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.). A contract may contain a provision that "seller may enter upon the premises where said property may be and remove same," since it does not waive any rights of the buyers. *Martens,* at 944.

■ In the case at bar, the language of the additional terms of the installment contract did not permit the seller or his assignee to break the law if they determined that repossession of the vehicle was warranted because of buyer's failure to make payments. Therefore, appellant's second point of error is overruled.

Appellant's third point of error is that the trial court erred in not holding that a provision which allowed appellees to accelerate the monthly installments not in compliance with the statute violated TEX.REV. CIV.STAT.ANN. art. 5069–7.07(1) (Vernon Supp.1984). The trial court made no findings of fact on this issue.

Article 5069–7.07(1) states that no retail installment contract shall provide that the seller or holder may accelerate the maturity of any part or all of the amount owing thereunder unless (a) the buyer is in default on the performance of any of his obligations or (b) the seller or holder in good faith believes that the prospect of payment or performance is impaired.

Appellant is complaining that one condition that would result in buyer's default and, therefore, the acceleration of payments under section 6 of the additional terms on the reverse side of the contract, is when the "required physical damage insurance (whether procured by the seller or by the buyer) is cancelled by the insurer prior to expiration thereof."

■ The rule on contract provisions is that they will be upheld, when they substantially follow the wording of a statute.

The language of the clause providing for other means of acceleration tracks the statutory language of Article 5069–7.-07(1)(b). The failure to maintain adequate insurance coverage either on the automobile or the life of the buyer would, as the statute dictates, amount to an impairment of the prospect of payment or performance of the contract.

*Grant v. Friendly Chrysler-Plymouth, Inc.,* at 668.

In *Haley v. Pagan Lewis Motors, Inc.,* at 320, this Court repeated the rule from *Grant* that contracting parties are presumed to have intended to obey the law unless the contrary clearly appears from the contract. This Court has held that the question of whether one of the events on which buyer would be considered in default might violate the Consumer Credit Code for purposes of accelerating the maturity can only be decided on a case-by-case basis. *Lundquist Buick-Opel, Inc. v. Wikoff,* 659 S.W.2d 466 (Tex.App.—Corpus Christi 1983, no writ).

■ Appellant argues that he has no power over whether the insurance may be cancelled for certain occurrences that may

be beyond his control. The language, at first, might appear somewhat unconscionable as appellant complains; but the court must also look at the language of the statute. This Court is obligated to adopt a construction of the terms as long as it comports with legality. *Haley,* at 320, and *Grant,* at 669. In *Grant,* the language of another contract was compared to the language of the statute. In noting that the failure to maintain adequate insurance coverage on the automobile would amount to an impairment of the prospect of either payment or performance of the contract, this Court did not call attention to whose fault it would be that the insurance was not maintained, rather the emphasis was on the impairment of the prospect for payment, which is a statutory basis for acceleration of payments. Appellant may have a cause of action against the insurer for any unwarranted cancellation of coverage. The contract does not violate Article 5069–7.-07(1) because the statute does not prohibit the acceleration of payments by a seller when a buyer is in default in the performance of his obligations, or when the prospect for payment is impaired. Appellant's third point of error is overruled.

■ Appellant's fourth point of error is that the trial court erred by not ruling that the retail installment contract failed to clearly and conspicuously state that the physical damage insurance was required under the contract, in violation of TEX. REV.CIV.STAT.ANN. art. 5069–7.06(3) (Vernon Supp.1984). That section provides, in part, that:

(3) When insurance is required in connection with such a contract or agreement made under this Chapter, the seller or holder shall furnish the borrower *a statement which shall clearly and conspicuously state that insurance is required in connection with the contract,* and that the buyer shall have the option of furnishing the required insurance either through existing policies of insurance owned or controlled by him or of procuring and furnishing equivalent insurance coverages through any insurance compa-

ny authorized to transact business in Texas.... Such statement or statements may be made in conjunction with or as part of the retail installment contract required by Article 7.02 or *may be made in a separate written statement or statements.* (Emphasis added.)

This Court addressed what is meant by "clear and conspicuous" in *Portland Tradewinds Ford,* at 29.

Inspection of the Retail Installment Contract does not reveal that the references to required physical damage insurance are clear and conspicuous. In the contract, the two references on the front side do not clearly and conspicuously show that physical damage insurance was required. At item 4A, the cost of the insurance is shown as "$–0–." that this insurance is required. The blanks in the box, under item 13 that is cross-referenced to item 4A, are not filled in at all, which would normally result in it not being read. *Chapman,* at 978. On the back side of the contract, items 3(a), 3(b) and 3(c) of the additional terms are not definite whether the physical damage insurance is being required and certainly are not in a clear and conspicuous means of print that would distinguish it from the excessive amount of verbiage on the back side.

The appellees are permitted to show under the language in the latter part of article 5069–7.06(3) TEX.REV.CIV.STAT.ANN. (Vernon Supp.1984), that a second form was provided to and executed by appellant which contained the requisite language that physical damage insurance was required under the contract. *Carbajal v. Ford Motor Credit Co.,* 658 S.W.2d 281, 285 (Tex.App.—Corpus Christi 1983, writ dism'd). In the case before us, the customer's statement has a section about one-third from the top of the form that provides in capital letters and slightly bolder print than the rest of the paragraph:

**MINIMUM PHYSICAL DAMAGE INSURANCE IS REQUIRED FOR THE FULL TERM OF THE INSTALMENT [sic] CONTRACT.**

As noted in *Carbajal,* the second document (the Customer's Statement), having

been provided and executed by appellant with language apprising appellant of the requirement to furnish physical damage insurance, overcomes any confusion which may have been created by the retail installment contract. Therefore, the two documents, taken together, did clearly and conspicuously comply with the statute. The findings of the trial court, that the retail installment contract substantially complies with disclosures required by Art. 5069–7.-06(3), and that appellees furnished plaintiff with a written statement at the time of the sale that minimum physical damage insurance was required for the full term of the contract as evidenced by the customer's statement form, will be upheld. The conclusion of law that the retail installment contract clearly and conspicuously disclosed to the buyer that physical damage insurance was required in connection with the contract will not be overturned. Appellant's fourth point of error is overruled.

The judgment of the trial court is AFFIRMED.

NYE, C.J., concurring.

BISSETT, J., not participating.

NYE, Chief Justice, concurring.

I concur in the result.